1   CROWELL & MORING LLP
    Kevin C. Mayer (CSB No. 118177)
2   Email: kmayer@crowell.com
    275 Battery Street, 23rd Floor
3   San Francisco, CA  94111
    Telephone:     415.986.2800
4   Facsimile:     415.628.5116

5   Andrew D. Kaplan (*Pro hac vice* application to be filed)
    E-mail: akaplan@crowell.com
6   Rebecca B. Chaney (*Pro hac vice* application to be filed)
    E-mail: rchaney@crowell.com
7   1001 Pennsylvania Avenue, NW
    Washington, D.C.  20004
8   Telephone:     202.624.2500
    Facsimile:     202.628.5116

9
    *Attorneys for Defendant Cordis Corporation*
10

11                      UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13                            OAKLAND DIVISION

14

15  DAVID RESOVSKY, GEORGE TODD,          Case No. _____
    DAVID BROWN, GWEN KRAMER;
16
              Plaintiffs,
17
          v.
18                                        **NOTICE OF REMOVAL OF**
    CORDIS CORPORATION, a corporation, and **ACTION PURSUANT TO 28 U.S.C.**
19  DOES 1 through 100, inclusive;        **§§ 1332, 1441, 1446 and 1453 BY**
                                          **DEFENDANT CORDIS**
20            Defendants.                 **CORPORATION**

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW
                                                        NOTICE OF REMOVAL

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Please take notice that defendant Cordis Corporation ("Cordis") hereby removes this action to federal court pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453 with full reservation of any and all defenses and objections.

In support of this notice, Cordis respectfully submits as follows:

1.  On April 20, 2016, plaintiffs Jerry Dunson, Joseph Gieber, Cheryl Grech, Robert Flanagan and Carol Flanagan filed a complaint ("Compl.") against Cordis Corporation and Does 1 through 100 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16812476 ("*Dunson*").

2.  On May 3, 2016, plaintiffs Heather Quinn, Brian Quinn, Kathrynn Kirby, Allison Brauer, Edward Brown, Patricia Brown, Michael Hickson, William Schenk, and Christina Jones filed a complaint against Cordis Corporation; Johnson & Johnson; and Does 1 through 50 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16814166 ("*Quinn*").

3.  On May 13, 2016, plaintiffs in *Quinn* filed a First Amended Complaint ("FAC"), adding as plaintiffs Nancy Folz, Edward Chizek and Andrew Chapman.  Plaintiffs' FAC does not assert claims against Johnson & Johnson.

4.  On May 5, 2016, plaintiffs Walter Herbert, Russell Anderson, Martha Graham, Frank Graham, Tamarra Grayson, Timothy Howard, Ted Michael Martinez, Cynthia Martinez, Judy Shaffer and John Shaffer, Jr. filed a complaint against Cordis Corporation; Johnson & Johnson; and Does 1 through 50 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16814569 ("*Herbert*").

5.  On May 13, 2016, plaintiffs in *Herbert* filed a FAC, adding as plaintiffs Clarice Stepp and Allison Fisher.  Plaintiffs' FAC does not assert claims against Johnson & Johnson.

6.  On May 6, 2016, plaintiffs Geanice Grant, Violet Elaine Kern, Russell Hopkins, Anthony Burbine, Courtney Comer, William Gouge, Rhonda Gail Schenk, Jennifer Allison, Bobby Fuller, Robert Edward Becker, Terry Ann Fountain, Marguerite

Norton, James Franklin Williams, Sr., Betty Reed, Clint Hurtado, Mark Wehmeier, Jennifer Schock, and Jordan Deed filed a complaint against Cordis Corporation; Johnson & Johnson; and Does 1 through 50, in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16814688 ("*Grant*").

7.    On May 13, 2016, plaintiffs in *Grant* filed a FAC, adding as plaintiffs Michelle Young and Victor Blair.  Plaintiffs' FAC does not assert claims against Johnson & Johnson.

8.    On May 6, 2016, plaintiffs David Resovsky, George Todd, David Brown and Gwen Kramer filed a complaint against Cordis Corporation and Does 1 through 100 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16814745 ("*Resovsky*").

9.    On May 20, 2016, plaintiffs Michael Barber, Andrew Clos, Jacquelyn Hanson, Donald Hernandez, Sr., Rhonda Hernandez, James Lewis, Connie Patterson, Carolyn Simmons, Walter Simmons, Michael Donlin, David Hamilton, Stephen Vandall, Heather Vandall, Dorothy Mills, Lakisha Hooks, Deborah Jarvis, Caroline Carr, Geraldine Clark, Robert Spishak, Barbara Spishak, Reina Jones, Venesia Johnson, Darnell Kilgore, Joseph Hershberger, Russell Zukrigil and Brian Zukrigil filed a complaint against Cordis Corporation; Johnson & Johnson; Cardinal Health, Inc.; and Does 1 through 50 in the Superior Court of the State of California for the County of Alameda, Civil Action No. RG16816487 ("*Barber*").

10.   On May 20, 2016, plaintiffs Lisa Oehring, Luther Leatham, Sonji Hutchinson, Sandra Sutter, Lynda Smith, Alan Goldberg, Benito Brown, Lupe Brown, Patricia Bunker, Carmen Burgess, Travis Burkhart, Kimberly Burkhart, Philip Faciana, Louise Hill, Keith Hunter, Ellen Juvera-Saiz, Brandi Kirk, Lisa Kumbier, Jessica Larimore, Herman Malone, Dorothy May, Dustin Merritt, Cindy Seymore, Freddie Wilson, Donald Holland, James McCord, Billy Richard, Melanie Richard, John Rogers, Sean Maguire, Laura Maguire, Gilda Southerland, Vincent Southerland, and Chad Southerland filed a complaint against Cordis Corporation; Johnson & Johnson; Cardinal Health, Inc.; and Does 1 through 50 in the Superior Court of the State of

1      California for the County of Alameda, Civil Action No. RG16816490 ("*Oehring*").

2   11.   On May 20, 2016, plaintiffs Wanda Holden, Tambra Shifflet, Lanora Barrett, Marcello

3      Coogan, Willie P. Cook, John Dawson, Fredderick Hall, Thomas Husted, Sabrina

4      Jackson, Juan Nelle Jeanes, Steven Johnson, Kendall McCoy, Michelle Montoya,

5      Karen Neal, Debra Porter, Tommy Porter, Carl Rexing, Hazel Webb, Cheryl Wright,

6      Evelyn Wright, and Thomas Yaudas filed a complaint against Cordis Corporation;

7      Confluent Medical Technologies, Inc.; and Does 1 through 100 in the Superior Court

8      of the State of California for the County of Alameda, Civil Action No. RG16816600

9      ("*Holden*").

10   12.   Thereafter, on May 27, 2016, plaintiffs in *Quinn* filed a notice of motion and motion

11      for consolidation of cases pursuant to California Code of Civil Procedure § 1048(a),

12      seeking to consolidate the actions of *Dunson*, *Quinn*, *Herbert*, *Grant*, *Resovsky*,

13      *Barber*, *Oehring*, and *Holden*, as well as "any similar actions filed with this court or

14      that may be filed with this court in the future." *See Quinn* Notice of Motion and

15      Motion for Consolidation of Cases ("Motion for Consolidation" or "Mot.") at 3-4

16      (attached hereto as Ex. A). The motion defines these eight and future-filed matters as

17      the "Related Actions." *Id.* at 4 (Ex. A). The motion seeks consolidation of these

18      Related Actions "for all pretrial purposes, including discovery and other proceedings,

19      and the institution of a bellwether-trial process" to address common questions

20      plaintiffs identify regarding alleged product failure and defendants' knowledge

21      thereof. *Id.* at 4, 7 (Ex. A). Plaintiffs assert that this process would serve "to avoid the

22      risk of inconsistent adjudications." *Id.* at 1 (Ex. A).

23   13.   The Memorandum of Points and Authorities in Support of the *Quinn* Motion for

24      Consolidation ("Mem.") represents that "[a]ll of the plaintiffs in the Related Actions,

25      and their respective attorneys and counsel of record, support the consolidation sought

26      in this motion." Mem. at 1, 6 (Ex. A).

27   14.   Plaintiffs initiated service of the *Quinn* Motion for Consolidation on May 27, 2016.

28      Mot., Certificate of Service (Ex. A). Cordis received service of the Motion for

1    Consolidation on June 1, 2016.  (Ex. A).

2    15.    Removal is timely pursuant to 28 U.S.C. § 1446(b) because this Notice of Removal is

3    being filed within thirty (30) days after receipt by Cordis of the *Quinn* Motion for

4    Consolidation, "from which it may first be ascertained that the case is one which is or

5    has become removable."  28 U.S.C. § 1446(b)(3).

6    16.    In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings and orders

7    served upon Cordis in this matter are attached as Exhibits A and B.

8    17.    The Superior Court of the State of California for the County of Alameda is located

9    within the Oakland Division of the United States District Court for the Northern

10    District of California.

11    18.    As shown below, this Court has jurisdiction pursuant to the Class Action Fairness Act

12    of 2005, 28 U.S.C. § 1332(d), in that this is a mass action in which monetary relief

13    claims of more than 100 persons are proposed to be tried jointly on the ground that the

14    plaintiffs' claims involve common questions of law or facts; the parties are of at least

15    minimally diverse citizenship; the aggregate amount in controversy exceeds

16    $5,000,000; and at least one plaintiff puts more than $75,000 in controversy, exclusive

17    of interest and costs.

18    19.    By removing this mass action to this Court, Cordis does not admit any of the facts

19    alleged in the complaint (or those in the Related Actions), or waive any defenses,

20    objections, or motions available to it under state or federal law.  Cordis reserves the

21    right to challenge the adequacy and viability of the complaint (and those in the Related

22    Actions) in all respects.  *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal*

23    *Practice and Procedure* § 1395 (3d ed. 1998) ("A party who removes an action from a

24    state to a federal court does not thereby waive any of his or her Federal Rule 12(b)

25    defenses or objections.").

26    **THE COURT HAS JURISDICTION UNDER**
**THE CLASS ACTION FAIRNESS ACT OF 2005**

27

28    20.    This action involves product liability claims arising from the alleged implantation of

1    Inferior Vena Cava filters ("IVC filters" or "filters")—the TrapEase® Permanent Vena

2    Cava Filter and the OptEase® Vena Cava Filter—into various individuals.  Mem. at 1

3    (Ex. A).  An IVC filter is a medical device that is placed surgically into the inferior

4    vena cava in the heart "to catch blood clots and stop them from traveling to the heart

5    or lungs."  *Id.*  Plaintiffs allege injuries arising from purported failure or defect of

6    these IVC filters.

7    21.    Removal of this action is authorized under the Class Action Fairness Act of 2005, 28

8    U.S.C. §§ 1332, *et seq.* ("CAFA").  28 U.S.C. §§ 1332(d) and 1453.

9    22.    Under CAFA, a federal court has jurisdiction over a "mass action," defined as "any

10    civil action . . . in which monetary relief claims of 100 or more persons are proposed

11    to be tried jointly on the ground that the plaintiffs' claims involve common questions

12    of law or fact," 28 U.S.C. § 1332(d)(11)(B)(i); where there is minimal diversity

13    between the parties, *id.* § 1332(d)(2); where the amount in controversy exceeds an

14    aggregate amount of $5 million, exclusive of interest and costs, *id.*; and where at least

15    one plaintiff satisfies the $75,000 amount in controversy element, *see id.* §

16    1332(d)(11)(B)(i); *Freitas v. McKesson Corp.*, No. 12-5948 SC, 2013 WL 685200, at

17    *2 (N.D. Cal. Feb. 25, 2013).

18    23.    While a presumption against removal may pertain in some settings, it does not pertain

19    to CAFA removal.  The United States Supreme Court has resolved that "no

20    antiremoval presumption attends cases invoking CAFA, which Congress enacted to

21    facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin*

22    *Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

23    **A.  This Is A Mass Action For CAFA Purposes**

24    24.    CAFA's mass action removal provision is triggered when plaintiffs have "proposed to

25    [] tr[y] jointly" the claims of 100 or more persons "on the ground that the plaintiffs'

26    claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11)(B)(i).

27    25.    Here, plaintiffs' so-called "Related Actions" consist of eight cases with approximately

28    140 plaintiffs, of which "approximately 120 are personal injury plaintiffs,

approximately 17 are loss of consortium plaintiffs, and three are wrongful death plaintiffs (for the same decedent)." Mem at 6 (Ex. A). Accordingly, the numeric element of CAFA's mass action rule is satisfied.

26. The *Quinn* Motion for Consolidation asserts that the so-called "Related Actions" present common questions of law and fact. *See* Mem. at 6-8 (Ex. A). This element of CAFA removal is thus satisfied.

27. Plaintiffs also "propose" a "joint trial" as CAFA requires. For CAFA removal purposes, the jurisdictional focus is on the "substance" of what plaintiffs propose. *See Corber v. Xanodyne Pharms., Inc.*, 771 F.3d 1218, 1225 (9th Cir. 2014) (*en banc*). Thus the request for a joint trial may be either explicit or implicit. *See id.*; *Allen v. Wilson*, No. CV 14-9686-JGB (AGRX), 2015 WL 846792, at *4 (C.D. Cal. Feb. 26, 2015).

28. Seeking consolidation pursuant to Section 1048(a)—as plaintiffs do here—can itself be probative of a "proposal" for "joint trial." As compared to a motion for coordination, "[a] motion to consolidate pursuant to Section 1048 would certainly be even stronger evidence of a plaintiff's intent to propose a joint trial." *Allen*, 2015 WL 846792, at *2. The substance of plaintiffs' motion and supporting memorandum corroborates this. On its face, plaintiffs' motion seeks more than consolidation "solely for pretrial proceedings." *See* 28 U.S.C. 1332(d)(11)(B)(ii)(IV) (excluding from definition of mass action a civil action where "the claims have been consolidated or coordinated solely for pretrial proceedings").

29. Specifically, the *Quinn* Motion for Consolidation seeks consolidation of the so-called Related Actions "for all pretrial purposes, including discovery and other proceedings, and the institution of a bellwether-trial process." Mot. at 4 (Ex. A).

30. Further still, plaintiffs propose that this "bellwether-trial process should be crafted and instated" to address common questions they identify regarding alleged product failures and defendants' knowledge thereof. Mem. at 9 (Ex. A).

31. Plaintiffs assert that a "bellwether-trial process" is desirable, *inter alia*, "to avoid the

risk of inconsistent adjudications." *Id.* at 1 (Ex. A). Plaintiffs state this goal
repeatedly. *Id.* at 2, 7-8. Courts have found consolidation proposals seeking to avoid
the risk of inconsistency as tantamount to seeking a "joint trial" for CAFA removal
purposes. *See, e.g.*, *Corber*, 771 F.3d at 1223-24; *Allen*, 2015 WL 846792, at *3; *see
also Atwell v. Boston Sci. Corp.*, 740 F.3d 1160, 1164-65 (8th Cir. 2013); *In re Abbott
Labs., Inc.*, 698 F.3d 568, 573 (7th Cir. 2012).

32. While plaintiffs suggest that they "are not requesting a consolidation of Related
Actions for purposes of a single trial to determine the outcome for all plaintiffs,"
Mem. at 7, this rhetoric rings hollow given what in fact they propose. Plaintiffs do not
limit their consolidation request to pretrial proceedings. They do not limit their
request to achieving efficiency goals. And they propose not merely a bellwether trial,
but an entire "process" and "protocol" for bellwether trials. In like circumstances,
courts look beyond rhetoric, focus on the substance of the request, and find the joint
trial element satisfied. *Corber*, 771 F.3d at 1225; *Allen*, 2015 WL 846792, at *4; *see
also Atwell*, 740 F.3d at 1166; *In re Abbott Labs.*, 698 F.3d at 573.[1]

33. With their consolidation motion and brief, plaintiffs have proposed to try jointly the
monetary relief claims of 100 or more persons, satisfying CAFA's mass action
requirement.

**B. The Parties Are Minimally Diverse**

34. There is minimal diversity between Cordis and plaintiffs insofar as "at least one
plaintiff is diverse in citizenship from any defendant." *Ibarra v. Manheim Invs., Inc.*,
775 F.3d 1193, 1195 (9th Cir. 2015).

35. Defendant is informed and believes that plaintiff Kathrynn Kirby, a plaintiff in this
mass action who is part of the *Quinn* action "at all times relevant to this action was
and is a citizen and resident of the state of South Carolina." *Quinn* FAC ¶ 10.

---

[1] Seeking bellwether trials is not inconsistent with a proposal to try cases jointly. "[A] joint trial
can take different forms so long as the plaintiffs' claims are being determined jointly." *In re
Abbott Labs*, 698 F.3d at 573.

36.  Defendant Cordis is now, and was at the time plaintiff filed the complaint, and at all intervening times, a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Ohio.[2]

37.  As such, for the purposes of diversity jurisdiction, Cordis is a citizen and resident of the states of Florida and Ohio.

38.  Accordingly, there is a minimal diversity between Cordis and at least one plaintiff in this mass action, Kathrynn Kirby.  *See* 28 U.S.C. § 1332(d)(2)(A) (the diversity requirement of CAFA is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant").

**C.  The Amount In Controversy Requirement Is Met**

39.  "[T]he general federal rule has long been to decide what the amount in controversy is from the complaint itself."  *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961).

40.  When measuring the amount in controversy, a court assumes that the complaint's allegations are true and that a jury would return a verdict for plaintiff on all claims made in the complaint.  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).  If the complaint seeks both actual and punitive damages, each must be considered "to the extent claimed" to determine the jurisdictional amount for diversity jurisdiction.  *Campbell v. Bridgestone/Firestone, Inc.*, No. CIVF051499FVSDLB, 2006 WL 707291, at *1 (E.D. Cal. Mar. 17, 2006) (quoting *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943)). The "ultimate inquiry" is not what a defendant may actually owe, but what amount the plaintiff's complaint puts "in controversy."  *Korn*, 536 F. Supp. 2d at 1205.

---

[2] The complaints in the *Dunson*, *Quinn*, *Herbert*, *Grant*, *Resovsky*, *Barber*, *Oehring*, and *Holden* actions, as well as the *Quinn* Motion to Consolidate, erroneously allege that Cordis' principal place of business is in California.  *See Dunson* Compl. ¶ 7; *Quinn* FAC ¶¶ 28, 29; *Herbert* FAC ¶¶ 20, 21; *Grant* FAC ¶¶ 28, 29; *Resovsky* Compl. ¶ 6; *Barber* Compl. ¶¶ 34, 35; *Oehring* Compl. ¶¶ 41, 42; *Holden* Compl. ¶ 23; Mem. at 2-3 (Ex. A).  In any event, there are plaintiffs in this mass action, including Plaintiff Kirby, who are citizens of states other than California, preserving minimal diversity.  Further, under CAFA, "the case may be removed even if one or more defendants are citizens of the state in which the action was brought."  *Ibarra*, 775 F.3d at 1195.

41. Under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554; *id.* at 553 (noting that, by design, § 1446(a) tracks general pleading requirements of Federal Rule of Civil Procedure 8(a)).

42. Here, it is apparent from the complaints in the Related Actions that plaintiffs seek an amount in controversy that exceeds $5 million in the aggregate, exclusive of costs and interest, and that at least one plaintiff's claim exceeds $75,000.

43. More than 130 plaintiffs seek to recover an array of damages, including general, special, and punitive damages, in strict products liability, negligence and fraud. Under CAFA, this Court considers whether the value of these claims in the aggregate exceeds $5 million. *See* 28 U.S.C. § 1332(d)(6), (d)(11) ("In any [m]ass action, the claims of the individual [] members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs."). Further, removal under CAFA is proper for "mass action" suits if at least one plaintiff's claim exceeds $75,000. *See* 28 U.S.C. § 1332(d)(11)(B)(i); *Freitas*, 2013 WL 685200, at *2.

44. This mass action asserts the claims of more than 115 IVC filter recipients who seek to recover for extreme "pain and suffering" and other injuries, 15 claims for loss of consortium, and 1 claim for wrongful death.

45. More than one hundred and fifteen plaintiffs allege that following implantation of their TrapEase® or OptEase® IVC filters, they may suffer or have suffered harm, such as "life-threatening injuries and damages[,] and require[d] extensive medical care and treatment," or that they were subject to "significant medical expenses, extreme pain and suffering, loss of enjoyment of life, [and] disability," among other injuries. *See, e.g.*, *Quinn* Am. Compl. ¶¶ 10-11; *Dunson* Compl. ¶¶ 1-2; *Grant* Am. Compl. ¶¶ 10-11; *Oehring* Compl. ¶¶ 16-17; *Holden* Compl. ¶¶ 1-2; *Herbert* Am. Compl. ¶¶ 8-9; *Barber* Compl. ¶¶ 9-10; *Resovsk*y Compl. ¶¶ 1-2. They contend that their injuries have caused or will cause them to "continue to suffer significant medical expenses,"

"pain and suffering," and other damages. *See e.g.*, *id.* The representatives of a deceased individual implanted with an IVC filter similarly allege that the deceased suffered "fatal injuries, damages, and untimely death." *Oehring* Compl. ¶ 40. As a result, plaintiffs each seek to recover substantial damages, including general, special, and punitive damages.

46. Courts in comparable settings have found that claims and assertions like those plaintiffs allege here, including those of extreme or severe pain and past and future medical expenses, set forth an amount in controversy exceeding $75,000 for each plaintiff, exclusive of interest and costs. *See, e.g.*, *Campbell*, 2006 WL 707291, at *2 (apparent from the complaint that amount in controversy exceeded $75,000 where plaintiffs (1) asserted strict products liability, negligence, and breach of warranty claims against multiple defendants for "*severe*" injuries and (2) sought compensatory damages for wage loss, hospital and medical expenses, general damages, and loss of earning capacity) (emphasis added)); *Bryant v. Apotex, Inc.*, No. 1:12-CV-01377-LJO-JLT, 2012 WL 5933042, at *4 (E.D. Cal. Nov. 27, 2012) (finding amount in controversy was satisfied where plaintiff sought compensatory damages for injuries and "severe pain" lasting six months, *severe* emotional distress, and punitive damages arising out of administration of certain drugs in "crushed form") (emphasis added)); *McCoy by Webb v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002) ("courts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages exceeded the jurisdictional amount"); *Purdiman v. Organon Pharms. USA, Inc.*, No. 2:08-CV-0006-RWS, 2008 WL 686996, at *2 (N.D. Ga. Mar. 12, 2008) (concluding that the "amount of damages at issue in this action, including past medical bills, the cost of future medical treatment, pain and suffering, and lost wages, more likely than not exceed[ed] $75,000" where plaintiff alleged that she sustained "permanent and debilitating" injuries as a result of using defendants' birth control medical device, including "intense pain" and future medical testing, treatment,

1    and monitoring for pulmonary embolisms).

2    47.    Each of the IVC filter recipients here asserts an amount in controversy that exceeds

3    $75,000, satisfying the requirement that at least one plaintiff's claim exceeds $75,000.

4    As such, plaintiffs cumulatively seek well more than the requisite $5 million.

5    48.    Beyond the damages alleged by supposed device recipients, an additional 15 plaintiffs

6    in this mass action seek to recover loss of consortium damages—thereby enhancing

7    the damages pleaded and underscoring that the claims here exceed the $5 million

8    aggregate threshold. *See, e.g.*, *General Motors Corp. v. Doupnik*, 1 F.3d 862, 864-65

9    (9th Cir. 1993) (assessing applicability of comparative fault to $1.6 million jury award

10    for loss of consortium for a single plaintiff).

11    49.    Plaintiffs' prayers for punitive damages make all the more undeniable plaintiffs'

12    pleading of more than $5 million in controversy. *See Bell*, 320 U.S. at 240 (both

13    actual and punitive damages are included in calculating the amount in controversy).

14    50.    Although Cordis denies any liability to plaintiffs, their allegations of economic and

15    non-economic loss, extreme pain and suffering, loss of consortium, and wrongful

16    death plainly place more than $5 million in controversy, exclusive of interest and

17    costs.

18    **D.  All Other Prerequisites To Removal Are Met**

19    51.    Pursuant to 28 U.S.C. § 1446(d), a copy of this notice is being served on plaintiffs,

20    and filed with the clerk of court for this Court and with the clerk of the court for the

21    Superior Court of the State of California for the County of Alameda.

22    52.    Cordis reserves the right to amend or supplement this Notice of Removal.

23    **E.  This Mass Action Is Properly Removed To This Court**

24    53.    Because this is a mass action in which plaintiffs propose to try monetary relief claims

25    of 100 or more persons jointly, there is minimal diversity of citizenship, the aggregate

26    amount in controversy exceeds $5 million and at least one plaintiff's claim exceeds

27    $75,000, this Court has original subject matter jurisdiction over this putative class

28    action.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

NOTICE OF REMOVAL

1

54.    Because subject matter jurisdiction exists under 28 U.S.C. § 1332(d), this action is

2    removable pursuant to 28 U.S.C. § 1453.

3        WHEREFORE, Cordis hereby respectfully gives notice that the above action, formerly

4    pending in the Superior Court of the State of California for the County of Alameda, is removed to

5    the United States District Court for the Northern District of California.

6

7    June 6, 2016                                    CROWELL & MORING LLP

8

By:  /s/ Kevin C. Mayer
9

Attorneys for Defendant Cordis Corporation
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>PROOF OF SERVICE</u>

I, Jennifer S. Tai, state:

My business address is 515 South Flower St., 40th Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to this action.

On the date set forth below, I served the foregoing document(s) described as:

**Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453 By Defendant Cordis Corporation**

on the following person(s) in this action:

**Troy A. Brenes**                     **Attorneys for Plaintiffs**
**BRENES LAW GROUP**
**16 A Journey, Suite 200**
**Aliso Viejo, CA 92656**
**Telephone: 949.397.9360**
**Facsimile: 949.607.4192**

☒     <u>BY FIRST CLASS MAIL</u>:  I am employed in the City and County of Los Angeles where the mailing occurred.  I enclosed the document(s) identified above in a sealed envelope or package addressed to the person(s) listed above, with postage fully paid.  I placed the envelope or package for collection and mailing, following our ordinary business practice.  I am readily familiar with this firm's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

☐     <u>BY MESSENGER SERVICE</u>:  I served the document(s) identified above by placing them in an envelope or package addressed to the person(s) listed above and providing them to a professional messenger service for service.  A declaration of personal service by the messenger is attached.

☐     <u>BY OVERNIGHT DELIVERY</u>:  I enclosed the document(s) identified above in a sealed envelope or package addressed to the person(s) listed above, in an envelope or package designated by the overnight delivery carrier with delivery fees paid or provided for.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier, or by delivering to a courier or driver authorized by the overnight delivery carrier to receive documents.

☐     <u>BY FACSIMILE</u>:  Based on an agreement of the parties to accept service by facsimile transmission, I faxed the document(s) identified above to the person(s) at the fax number(s) listed above.  The transmission was reported complete and without error.  I have attached a copy of the transmission report that was issued by the facsimile machine.

☐     <u>BY ELECTRONIC MAIL</u>:  Based on a court order or an agreement of the parties to accept service by electronic mail, I caused the document(s) identified above to be transmitted electronically to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-1-                        NOTICE OF REMOVAL

1        I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

2

3        Executed on June 6, 2016, at Los Angeles, California.

4

5    _____
                 Jennifer S. Tai

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-                                    NOTICE OF REMOVAL